IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DONOVAN A. LIVINGSTON,

    Movant/Defendant,

    v.

UNITED STATES OF AMERICA,

    Respondent/Plaintiff.

)
)
)
) Crim. No. 08-79-SLR
) Civ. No. 11-1247-SLR
)
)
)
)

**MEMORANDUM OPINION**

---

Donovan A. Livingston.  Pro se movant.

Shannon Thee Hanson.  Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware.  Counsel for respondent.

---

April  **I**  , 2014
Wilmington, Delaware

ROBINSON, District Judge

## I.   INTRODUCTION

Donovan A. Livingston ("movant") is a federal inmate currently confined at the

Adams County Correctional Institution in Natchez, Mississippi.  Movant timely filed a

motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  (D.I. 77)

The government filed an answer in opposition.  (D.I. 90)  For the reasons discussed, the

court will deny movant's § 2255 motion without holding an evidentiary hearing.

## II.   BACKGROUND

Movant was born in Jamaica in 1961 and is a citizen of Jamaica.  His mother is

Cislyn Rowe Livingston. His biological father is not listed on his birth certificate.  (D.I. 90

at 2)

In 1969, movant's mother married Herman Taylor, who was a United States

citizen by birth.  On or about September 26, 1976, at the age of fifteen, movant was

admitted into the United States as a lawful permanent resident.  On October 26, 1979,

when movant was more than eighteen years of age, his mother completed an

application to become a naturalized United States citizen.  Movant's mother became a

naturalized United States citizen on December 17, 1979. *Id.*

Between 1985 and 1990, movant was convicted of numerous criminal offenses in

the State of Delaware, including: (1) carrying a concealed dangerous instrument, in

violation of 11 Del. Code § 1442; (2) receiving stolen property, in violation of 11 Del.

Code § 851; and (3) robbery, in violation of 11 Del. Code § 832.  As a result, on August

1, 1994, the Immigration and Nationalization Service issued an order to show cause and

notice of hearing charging that movant was subject to deportation; a "warrant for arrest of alien" was issued that same day.  On October 17, 1994, movant was personally served with the order to show cause and taken into custody, and then released from custody on a $15,000 bond.  *Id.*

Movant hired an attorney, Christina Aborlleile, Esquire, and requested a redetermination of bond.  On January 10, 1995, notice was sent to Ms. Aborlleile that movant's deportation hearing was scheduled for June 15, 1995.  On June 14, 1995, one day prior to the hearing, Ms. Aborlleile filed a motion to withdraw as counsel, asserting that movant had not responded to her correspondence regarding continued representation.  She did not send a copy of the motion to movant.  *Id.* at 3.

On June 15, 1995, the Immigration Judge granted Ms. Aborlleile's motion to withdraw as counsel.  Movant did not appear at the June 15, 1995 hearing.  At the request of the government, movant's deportation hearing was conducted in absentia.  Based in part on a finding that movant had not made any application for relief from deportation, the Immigration Judge ordered movant deported.  *Id.*

Prior to his deportation, movant obtained new counsel, Kenneth Kitay, Esquire, and filed both a motion to reopen the deportation proceedings and a motion to stay the deportation.  On November 1, 1995, before those motions were addressed by the Immigration Judge, Mr. Kitay filed a motion to withdraw movant's motion to reopen the order of deportation and a motion to withdraw the motion for stay of deportation.  Mr. Kitay also filed a motion for execution of the June 15, 1995 deportation order, stating that: (1) movant's rights in the deportation proceeding had been explained to him; (2)

2

movant understood he was voluntarily waiving any right to examine the evidence against him or to present evidence on his own behalf; (3) movant conceded he was deportable; and (4) he waived any rights that he may have had to apply for relief from deportation.  On November 2, 1995, the Immigration Judge granted the motion for execution of the June 15, 1995 deportation order.  Movant was deported to Jamaica on November 11, 1995.  *Id.* at 3-4.

Testimony from movant's trial established that movant re-entered the United States illegally in late 1998 or early 1999.  On January 11, 1999, movant came into contact with law enforcement officers and was temporarily detained.  The officers who detained movant suspected he was not a United States citizen and called Immigration and Naturalization Service Special Agent Christopher Kudless.  Special Agent Kudless spoke to movant by phone, at which time movant identified himself as "Darnell Robinson."  Movant was released from custody based on this statement of false identity.  *Id.* at 4.

On or about January 15, 1999, Special Agent Kudless received a copy of fingerprints that had been taken from "Darnell Robinson."  After sending the fingerprints to the Federal Bureau of Investigation ("FBI") Special Processing Unit,  Special Agent Kudless learned for the first time that the fingerprints matched movant's fingerprints.  Special Agent Kudless then reviewed the FBI records and learned that movant had previously been deported from the United States.  *Id.*

In August 1999, while still at large, movant was indicted for illegal entry after deportation.  On or about March 13, 2000, FBI Special Agent Scott Duffey, who at the

time was a member of a fugitive task force, opened an investigation to locate and apprehend movant. Initially, Special Agent Duffey ran movant's information through several databases to see if movant had applied for any credit or had listed any addresses. Those efforts were unsuccessful. *Id.* at 4-5.

Special Agent Duffey began to conduct surveillance on addresses of movant's known acquaintants. Around March 2003, Special Agent Duffey learned that a woman named Vanessa Reid was movant's close friend. Special Agent Duffey obtained a search warrant for Ms. Reid's apartment in an attempt to locate and apprehend movant. Ms. Reid was present at the time of the search. Special Agent Duffey informed Ms. Reid that movant was wanted and that the fugitive task force would not stop looking, and asked her several questions about movant's whereabouts. Special Agent Duffey also provided Ms. Reid with his cell phone number. *Id.* at 5.

Soon thereafter, Special Agent Duffey received a call on his cell phone from a blocked telephone number. The male caller spoke with a Jamaican accent and told Special Agent Duffey to stay away from Ms. Reid. Suspecting that the caller was movant, Special Agent Duffey told movant that he was wanted for state and federal violations and urged him to surrender. Special Agent  Duffey subsequently spoke to movant numerous times, became very familiar with movant's voice and, therefore, was certain that the person who called him in March 2003 was movant. *Id.*

Special Agent Duffey spoke to movant on the phone approximately twelve times between March 2003 and November 2007. Movant always initiated the calls and, except for one occasion, called from a blocked telephone number. Every time Special

4

Agent Duffey spoke with movant he informed movant that he was wanted by law enforcement and asked him to turn himself in. Movant always refused. Special Agent Duffey also tried unsuccessfully to get movant to reveal clues about his location. Movant told Special Agent Duffey that he would not meet with him face-to-face because he was afraid that Special Agent Duffey would lock him up. *Id.*

In 2006, the 1999 illegal re-entry indictment was dismissed "in the interests of justice." *Id.* At that time, movant had been a fugitive for approximately seven years. *Id.*

Around November 23, 2007, Special Agent Duffey received a call on his cell phone from a Nassau County, New York, law enforcement official. The official told Special Agent Duffey that he had arrested an individual named Don Johnson and that Special Agent Duffey's phone number was saved in the individual's cell phone. Special Agent Duffey could hear the arrested individual speaking in the background and realized that the voice of the individual who called himself "Don Johnson" was actually movant. Special Agent Duffey instructed the official not to release movant. A few months later, Special Agent Duffey and other members of the fugitive task force traveled to Nassau County and took movant into federal custody. *Id.*

On May 15, 2008, a federal grand jury returned a one-count indictment charging that, on or about January 20, 2008, movant, an alien and citizen of Jamaica, was found in the United States, and was knowingly in the United States, after having been deported therefrom on or about November 11, 1995, and that movant did not have official permission to re-enter the United States, in violation of 8 U.S.C. §§ 1326(a) and (b). Trial was scheduled for September 8, 2009. *Id.* at 6-7.

5

Movant was represented by privately retained counsel until counsel withdrew from such representation on March 3, 2009. (D.I. 15) An assistant federal public defender (hereinafter referred to as "defense counsel") was appointed to represent movant on March 10, 2009. (D.I. 18) Prior to trial, defense counsel sent a letter to the court stating that movant wished to raise a "defense of derivative citizenship" at trial. (D.I. 26) Defense counsel further stated that she had conducted a "thorough investigation, with the assistance of an immigration attorney [and] . . . informed movant that she had no good faith basis to raise that defense." *Id.* In her letter, defense counsel also informed the court that movant had expressed a desire to hire new counsel or proceed pro se. As a result, defense counsel asked that movant have an opportunity to address the court prior to trial as to how he wished to proceed. *Id.* The government responded by letter opposing any continuation of the trial and asking that the court engage movant in a colloquy to determine if he knowingly and intelligently wished to proceed pro se. (D.I. 27) On August 18, 2009, the court issued an order affording movant an opportunity to state his concerns at the pretrial conference, which was scheduled for August 31, 2009. (D.I. 28)

On August 27, 2009, defense counsel and the government filed jointly-proposed jury instructions. (D.I. 32) Defense counsel separately filed a proposed jury instruction to have the jury determine if the indictment was filed within the five-year statute of limitations. (D.I. 33) On August 28, 2009, the government filed a motion to strike defense counsel's proposed jury instructions, arguing that the court, not the jury, should determine whether the indictment was timely filed. (D.I. 38) The government also

argued that the "only disputed issue is whether the statute of limitations should be tolled pursuant to 18 U.S.C. § 3290," a statute precluding the application of a statute of limitations defense to a person fleeing from justice, and cited case law holding that tolling was an issue for the court and not the jury. *Id.* On August 28, 2009, defense counsel submitted a letter to the court in response to the government's motion, identifying the statute of limitations as an affirmative defense and requesting that the issue be presented to the jury. (D.I. 39)  The court agreed with the defense's argument and submitted the issue to the jury at the conclusion of the trial. (D.I. 90 at 7-8)

On August 31, 2009, immediately prior to the pre-trial conference, defense counsel filed a motion to dismiss the indictment based upon a collateral attack on movant's prior deportation pursuant to 8 U.S.C. § 1326(d) and *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).  In a memorandum in support of the motion to dismiss the indictment, defense counsel argued that movant never received notice of his 1995 deportation hearing.  Regarding the motion for execution of the June 15, 1995 deportation order that was filed in the Immigration Court by movant's attorney at the time, Mr. Kitay, in which movant waived any rights that he may have had to apply for relief from deportation, defense counsel stated that she had spoken with Mr. Kitay and that he "neither remembered filing a motion to withdraw [his motions challenging the prior deportation proceedings] nor did the signature on the motion resemble his signature." (D.I. 41 at 5)  Aside from defense counsel's statement in the motion regarding her correspondence with Mr. Kitay, movant did not submit any evidence, documents, or affidavits to support this claim.  (D.I. 90 at 8-9)

The motion to dismiss the indictment also alleged that movant's deportation was fundamentally unfair because, according to him, had he received notice of the deportation hearing, he would have sought a discretionary waiver of removal from the Attorney General pursuant to the now-repealed 8 U.S.C. § 1182. *Id.* at 9. At the pre-trial conference later that day, movant filed in open court a pro se "Statement of Facts" alleging that he was entitled to derivative citizenship through his stepfather, who was a United States citizen. The government filed an objection noting that movant had made a similar citizenship argument in an application for certificate of citizenship before the United States Citizenship and Immigrations Services, which was rejected. The government also argued that movant was not entitled to derivative citizenship as a matter of law and objected to movant making such an argument at trial. *Id.*

The pretrial conference continued on September 1, 2009. The court orally denied as meritless the defense's collateral attack of movant's deportation. The court also orally concluded that movant could not derive citizenship through his mother because he was more than eighteen years old when his mother became a naturalized citizen. (D.I. 68) On September 8, 2009, the court issued a written opinion memorializing its: (1) denial of movant's collateral attack on his prior deportation; (2) decision to allow the jury to determine whether the indictment was within the statute of limitations; and (3) decision that movant was not eligible for derivative citizenship under now-repealed 8 U.S.C. § 1342(a). (D.I. 49)

On the morning of September 8, 2009, movant addressed the court outside the presence of the jury and requested permission to represent himself. After conducting a colloquy with movant, the court concluded that movant was knowingly and intelligently

8

exercising his right to proceed pro se.  Movant then addressed the court and argued

that the court had erroneously denied his derivative citizenship claim, arguing that he

was entitled to derivative citizenship through his stepfather rather than through his

mother.  The court agreed to hear further argument and evidence on this issue after jury

selection.  (D.I. 69)

The jury was selected and then excused for the day.  The court permitted

movant's sister, Ms. Evelyn Carradice, to testify in support of movant's derivative

citizenship claim.  After Ms. Carridice's testimony, the court heard further arguments on

the issue.  (D.I. 69)  Later that day, the court issued a second written decision again

denying movant's claim of derivative citizenship, this time under 8 U.S.C. § 1431. The

court explained that none of the various versions of 8 U.S.C. § 1431 entitled movant to

derivative citizenship through his mother (who became a naturalized United States

citizen after movant turned eighteen) or through his stepfather, who was a United States

citizen by birth.  (D.I. 52)

Movant's three-day jury trial started on September 9, 2009.  Prior to opening

statements, movant decided that he did not want to proceed pro se, and he was

thereafter represented by defense counsel.  (D.I. 70)  On September 10, 2009, the jury

found movant guilty of illegal reentry after deportation, in violation of 8 U.S.C. §§

1326(a) and (b).  (D.I. 55;  D.I. 56)  The jury also returned a special verdict finding that

the government had proven by a preponderance of the evidence that the applicable

statute of limitations was tolled by the movant's fugitive status, such that the indictment

was not barred by the statute of limitations.  (D.I. 90 at 12)  The court scheduled

sentencing for December 16, 2009.  (D.I. 61)

Prior to movant's sentencing, the United States Probation Office prepared a Pre-Sentence Report (PSR) calculating an advisory guidelines range of 92-115 months of imprisonment, resulting from a total offense level of 24 and a criminal history category of V.  (D.I. 90 at 12-13)  On December 1, 2009, defense counsel filed a motion for downward departure, alleging that movant's criminal history category substantially over-represented the seriousness of his criminal history and potential for recidivism.  (D.I. 63)  Defense counsel argued that the court should grant the motion for a downward departure and reduce movant's criminal history category from V to II, which would have resulted in an advisory guidelines range of 57-71 months of imprisonment.  Alternatively, defense counsel requested that the court grant a variance from the advisory guidelines range based on, among other factors, movant's age, the age and nature of his criminal convictions, and his reasons for illegally re-entering the United States.  *Id.*  The government filed a response opposing the requested variance and recommending that the court sentence movant within the advisory guideline range of 92-115 months of imprisonment.  (D.I. 64)

At sentencing, the court denied the motion for downward departure but *sua sponte* removed two criminal history points, resulting in a guidelines range of 77-96 months of imprisonment.  (D.I. 74)  The court sentenced movant to seventy-seven months of imprisonment.  (D.I. 65)

Movant appealed his conviction and sentence and, represented by new counsel, argued that the court erred in: (1) dismissing his collateral challenge to his deportation

10

proceedings; (2) denying his request to dismiss the indictment based on what he contends was prima facie evidence of a derivative Untied States citizenship; and (3) denying his request to dismiss the indictment on statute of limitations grounds. *See United States v. Livingston*, 404 F. App'x 685 (3d Cir. 2010). Movant also challenged his sentence as unreasonable. The Third Circuit Court of Appeals rejected movant's arguments as meritless and affirmed his conviction and sentence. *Id.* Movant filed a pro se motion for rehearing, which the Third Circuit denied. (D.I. 90 at Exh. E)

## III. DISCUSSION

Movant timely filed his pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, asserting the following grounds for relief: (1) the court erred in dismissing his collateral challenge to his deportation proceedings; (2) the court erred in denying his request to dismiss the indictment based on what he contends was prima facie evidence of derivative United States citizenship; (3) the court erred in denying his request to dismiss the indictment on statute of limitation grounds; (4) his sentence of seventy-seven months of imprisonment was unreasonable; and (5) defense counsel provided ineffective assistance. (D.I. 77)

### A. Claims One Through Four: Procedurally Barred

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct his sentence on the grounds that

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

11

28 U.S.C. § 2255.  However, "[o]nce a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255." *United States v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir. 1981).  As a general rule, relitigation of a claim considered on direct appeal is barred unless: (1) there is newly discovered evidence that could not reasonably have been presented at the original trial; (2) there is a change in applicable law; (3) counsel provided ineffective assistance; or (4) other circumstances indicate that the accused did not receive full and fair consideration of his federal constitutional and statutory claims.  *See United States v. Palumbo*, 608 F.2d 529, 533 (3d Cir. 1979); *see also United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993); *Davis v. United States*, 417 U.S. 333, 342 (1974).

The issues raised in claims one through four were fully considered by the Third Circuit during movant's direct appeal, and there are no other *Palumbo* factors compelling post-conviction review.  As a result, the court declines to review the claims again.  Accordingly, the court will deny claims one, two, three, and four as procedurally barred.

### B. Claim Five:  Ineffective Assistance of Counsel

Movant asserts that defense counsel provided ineffective assistance during his 2009 trial by:  (1) failing to call any of his proposed witnesses to testify; (2) deciding not to pursue movant's derivative citizenship defense and disregarding the documentation he provided to support that defense; (3) ignoring movant's request to collaterally attack his previous deportation proceedings; (4) failing to introduce into evidence a subpoena

regarding access to movant's phone records; and (5) "having no inkling as to the procedures concerning immigration matters which created a disastrous outcome." (D.I. 83 at 1-2)

Movant has properly raised his ineffective assistance of counsel allegations in the instant § 2255 motion rather than on direct appeal,[1] and the court must review these arguments pursuant to the two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the first *Strickland* prong, movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, movant must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. Additionally, in order to sustain an ineffective assistance of counsel claim, movant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

### 1. Counsel did not call witnesses requested by movant

Movant contends that defense counsel provided ineffective assistance by failing to call the following witnesses he requested: (1) Lamonica Robinson; (2) Kenneth Kitay;

---

[1]*See United States v. Garth,* 188 F.3d 99, 107 n.11 (3d Cir. 1999); *United States v. Cocivera,* 104 F.3d 566, 570 (3d Cir. 1996).

(3) Christina Arabella;[2] (4) Shawn Cavanaugh; (5) Special Agent Scott Duffey; (6) Special Agent Chris Kudless; (7) Deenie A., and (8) Evelyn Carradice.  The record belies movant's assertions with respect to Special Agent  Kudless and Ms. Robinson because counsel did, in fact, call these individuals to testify at trial.  (D.I. 46)  Although Special Agent Duffey was called by the government as a rebuttal witness, defense counsel cross-examined him.  In turn, Ms. Carridice testified before the court at length prior to trial regarding movant's claim of derivative citizenship.  Considering that witnesses Duffey, Kudless, Robinson, and Carradice actually testified before the court, movant cannot demonstrate that he was prejudiced by counsel's actions.

Movant's complaint about counsel's failure to call Mr. Kitay, Ms. Arabella, and Deenie A. as witnesses is equally unavailing.  As a general rule, courts presume that counsel acted strategically in deciding not to call certain witnesses, and the defendant bears the burden of rebutting that presumption.  See Thomas v. Varner, 428 F.3d 490, 499-500 (3d Cir. 2005).  An otherwise reasonable decision by counsel not to call certain witnesses is not ineffective simply because it differed from the defendant's wishes. See, e.g., Diggs v. Owens, 833 F.2d 439, 445-46 (3d Cir. 1987).

In this case, the "Defense's Witness List" filed by defense counsel on September 4, 2009 only identifies Special Agent Kudless as a witness.  However, the list also contains defense counsel's statement that, "[t]here are other potential witnesses [movant] would like to testify, [but] at this time counsel has not been able to interview

---

[2]Although not entirely clear, it appears that the name of witness "Christina Arabella" is actually spelled "Christina Aborlleile."  Ms. Aborlleile represented movant with respect to his deportation proceedings, from sometime in late 1994 through June 15, 1995. However, the court will refer to the witness as Ms. Arabella, which is the same name used by the government and movant.

them. If they are relevant to the trial issues defense counsel will inform the court prior to jury selection." (D.I. 46) As previously explained, in addition to Special Agent Kudless, the defense called Ms. Robinson to testify, demonstrating that defense counsel did, in fact, make a subsequent decision to add at least one witness. Viewing these circumstances in conjunction with defense counsel's affidavit statement denying movant's allegation that she "failed to call favorable witnesses" (D.I. 90 at Exh. A), the court presumes that counsel purposefully and strategically decided not to call Kitay, Arabella, and Deenie A. as witnesses. Notably, movant has not provided anything to rebut this presumption.

Additionally, movant does not describe the potential testimony Mr. Kitay, Ms. Arabella, and Deenie A. could have provided,[3] nor does he identify how their testimony would have been helpful to his defense. *See Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir. 2008)(rejecting ineffective assistance of counsel claim where petitioner failed to identify favorable evidence that would have been found and helpful testimony from the witnesses). As such, movant has also failed to demonstrate the requisite prejudice necessary under *Strickland* to sustain a claim of ineffective assistance.

---

[3]Mr. Kitay and Ms. Arabella represented movant during his 1995 deportation proceedings, and nothing in the record indicates that they had any contact with movant after his deportation. Prior to trial, the court rejected as meritless movant's pro se argument for derivative citizenship, and explicitly stated that the issue would not be presented to the jury. Therefore, because it appears that Mr.Kitay and Ms. Arabella only would have been able to testify about matters concerning movant's 1995 deportation proceedings, it was reasonable for defense counsel to conclude that Mr. Kitay and Ms. Arabella could not offer testimony relevant to the illegal re-entry charge.

## 2. Counsel did not pursue a derivative citizenship defense

Movant contends that counsel provided ineffective assistance by refusing to pursue a derivative citizenship claim at trial. It is unclear whether movant is alleging that counsel was ineffective because she decided prior to trial that she had no good faith basis for raising a defense of derivative citizenship, or whether movant is alleging that counsel should have presented the derivative citizenship defense at trial despite the court's pre-trial decision that movant's pro se derivative citizenship argument lacked merit and would not be presented to the jury. Regardless, both interpretations of movant's claim are unavailing. To begin, in her affidavit, defense counsel explains that she decided not to pursue the derivative citizenship defense because she reviewed the matter with an experienced immigration attorney on at least two separate occasions prior to trial and, after reviewing two comprehensive memoranda of law regarding the issue, concluded that there was "no good faith basis to raise such a defense." (D.I. 26; D.I. 90 at Exh. A; D.I. 90 at Exh. B) Given her extensive investigation into the merits of movant's claim of derivative citizenship, movant cannot demonstrate that defense counsel's pre-trial decision not to pursue the defense was objectively unreasonable.

To the extent movant contends that defense counsel performed deficiently by not presenting the derivative citizenship defense at trial, his argument is unavailing. After hearing, and denying, movant's pre-trial argument for derivative citizenship for a second time, the court stated that it "will not entertain any further evidence or argument on the issue of derivative citizenship, and it shall not be presented to the jury." (D.I. 52 at 4) As such, it would have been objectively unreasonable for defense counsel to attempt to

present the derivative citizenship defense at trial after the court's clear and explicit proscription.

Movant also cannot demonstrate that he suffered prejudice as a result of counsel's performance. Even though defense counsel decided prior to trial that she would not present a derivative citizenship defense, the court permitted movant himself to present his derivative citizenship evidence in support of his defense at the August 31, 2009 pre-trial conference. After considering his evidence, the court orally denied movant's claim that he was entitled to derivative citizenship, and then memorialized this decision in a written memorandum order dated September 8, 2009. (D.I. 49) The court issued a second memorandum order denying the claim after hearing further from both movant and his sister, Ms. Carradice. (D.I. 52; D.I. 90 at Exh. F. A208-31,A317-38) And finally, on direct appeal, the Third Circuit held that movant's derivative citizenship argument lacked merit. See Livingston, 404 F. App'x at 689-90.

It is well-settled that an attorney does not render ineffective assistance by failing to present a meritless argument. See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999). This court rejected movant's derivative citizenship claim for lack of merit on two occasions, and the Third Circuit also rejected the argument as meritless during movant's direct appeal. Given these circumstances, movant cannot demonstrate that he was prejudiced by counsel's failure to present a meritless derivative citizenship defense.

17

### 3.  Counsel ignored movant's request to collaterally attack his previous deportation proceedings

Next, movant asserts that defense counsel provided ineffective assistance by ignoring his request to challenge his previous deportation proceedings.  This argument is factually basis, because the record clearly demonstrates that counsel filed a motion to dismiss the indictment based upon a collateral attack on his prior deportation pursuant to 8 U.S.C. §1326(d) and *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).  (D.I. 40)  The fact that the court denied the motion does not demonstrate that counsel was ineffective.

### 4.  Counsel failed to introduce into evidence the subpoena regarding movant's phone records

Movant asserts that he "asked [counsel] to enter into evidence a subpoena that was used by . . . [Special A]gent Chris Kudless to access [movant's] phone records from the Verizon telephone company which gave them access to [movant's] phone records and address," but that she failed to do so.  (D.I. 83 at 1)  This argument is factually baseless because defense counsel did admit the subpoena into evidence.  As such, movant cannot satisfy either prong of the *Strickland* standard.

### 5.  Counsel did not understand immigration matters

Finally, movant alleges that defense counsel "had no inkling as to the procedures concerning immigration matters which created a disastrous outcome." (D.I. 83 at 2) This conclusory and unsubstantiated assertion fails to satisfy either prong of the *Strickland* test.

As previously discussed, defense counsel consulted with an experienced immigration attorney during her representation of movant.  Defense counsel actively

18

and persistently challenged movant's prior deportation proceeding via the motion to dismiss the indictment. Defense counsel also argued that the statute of limitations for the offense of illegal re-entry following deportation was not tolled as a result of movant's fugitive status between 1999 and November 2007, and provided testimony and documentary evidence to support that argument. Given all of these circumstances, the court concludes that defense counsel's performance with respect to the immigration issues was objectively reasonable.

In turn, movant's vague and conclusory assertion that defense counsel's alleged lack of immigration law knowledge caused a "disastrous outcome" is insufficient to establish that the outcome of the proceeding would have been different  but for counsel's representation. As such, the court rejects movant's contention that counsel provided ineffective assistance with respect to the immigration issues in his case.

Accordingly, the court will deny claim five as meritless.

## IV. EVIDENTIARY HEARING

Section 2255 requires a district court to hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously explained, the record conclusively demonstrates that movant is not entitled to relief because four of his arguments are procedurally barred and his fifth claim lacks merit. Therefore, the court will deny movant's § 2255 motion without an evidentiary hearing.

19

## V.   CONCLUSION

For the reasons stated, the court will dismiss movant's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence without an evidentiary hearing.  Additionally, the court will not issue a certificate of appealability because movant's § 2255 motion fails to assert a constitutional claim that can be redressed, and reasonable jurists would not find this assessment debatable.  *See* 28 U.S.C. § 2253(c)(2)("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right.");  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); Fed. R. App. P. 22; 3d Cir. L.A.R. 22.2 (2011).  An appropriate order will follow.